Officer James E. Aldridge Veterans Affairs Police 5201 Raymond Street Longwood, Florida 32803
Dear Officer Aldridge:
As a federal police officer with the United States Department of Veterans Affairs, you ask substantially the following question:
Do federal law enforcement officers constitute law enforcement officers entitled under Florida's Baker Act to initiate the involuntary examination of a person who may be mentally ill or to transport patients?
In sum:
Federal law enforcement officers do not constitute law enforcement officers for purposes of Florida's Baker Act, and thus possess no authority under the act to initiate the involuntary examination of a person or to transport such person as law enforcement officers.
Part I, Chapter 394, Florida Statutes, is "The Baker Act,"[1]
Florida's mental health act, and provides for voluntary or involuntary examination and treatment of mentally ill persons. Pursuant to section 394.463(1), Florida Statutes, a person may be taken to a receiving facility[2] for involuntary examination if there is reason to believe that he or she is mentally ill and because of that mental illness has refused voluntary examination or is unable to determine for himself or herself whether examination is necessary. A determination must be made that, without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself or that there is substantial likelihood that without care or treatment serious bodily harm to that person or others may result in the near future as evidenced by recent behavior.[3]
An involuntary examination may be initiated under a number of circumstances. Section 394.463(2)(a)2., Florida Statutes, provides in part:
"A law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to the nearest receiving facility for examination. The officer shall execute a written report detailing the circumstances under which the person was taken into custody, and the report shall be made a part of the patient's clinical record."[4]
In addition, a court may enter an ex parte order stating that a person appears to meet the criteria for involuntary examination or a physician, clinical psychologist, psychiatric nurse or clinical social worker may execute a certificate indicating that he or she has examined the person within the preceding forty-eight hours and the person appears to meet the criteria for involuntary examination.[5] In such cases, if other less restrictive means are not available, a law enforcement officer shall take the person into custody and deliver him or her to the nearest receiving facility for involuntary examination.[6]
Section 394.462(1)(a), Florida Statutes, requires that each county designate a single law enforcement agency within the county, or portions thereof, to take a person into custody upon entry of an ex parte order or execution of a certificate for involuntary examination by an authorized professional and to transport that person to the nearest receiving facility for examination. The law enforcement agency may decline to transport the person if the jurisdiction designated by the county has contracted on an annual basis with an emergency medical transport service or private transport company under the conditions specified in the statute.[7]
Generally, however, county or municipal law enforcement and correctional personnel and equipment are not to be used to transport patients adjudicated incapacitated or found by the court to meet the criteria for involuntary placement, except in small rural counties where there are no cost-effective alternatives.[8]
Rather, the county is responsible for contracting with private transport companies for the transportation of patients to and from a treatment facility in those instances where neither the patient nor any person legally obligated or responsible for the patient is able to pay for the expense of transportation.
For purposes of the Baker Act a "[l]aw enforcement officer" means "a law enforcement officer as defined in s. 943.10."[9] Section943.10(1), Florida Statutes, defines "[l]aw enforcement officer" as
"any person who is elected, appointed, or employed full time byany municipality or the state or any political subdivisionthereof; who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state. This definition includes all certified supervisory and command personnel whose duties include, in whole or in part, the supervision, training, guidance, and management responsibilities of full-time law enforcement officers, part-time law enforcement officers, or auxiliary law enforcement officers but does not include support personnel employed by the employing agency." (e.s.)
As a federal police officer, you are not appointed or employed by the state or a political subdivision thereof. The Supreme Court of Florida in McLaughlin v. State[10] noted that section 784.07, Florida Statutes, which defined "law enforcement officer" as "those terms are respectively defined in s. 943.10," did not embrace United States Federal Protection Service officers since such officers were not state or local officers:
"[W]e note that section 784.07(1)(a) states that "the term `law enforcement officer' includes a law enforcement officer . . . [as] defined in s. 943.10." Section 943.10 provides at the outset that "`[l]aw enforcement officer' means any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof." The meaning of these words cannot be plainer: A "law enforcement officer" for section 784.07
purposes must be either a state or local officer."
Since the federal officers were not employees or officers of "any municipality or the state or any political subdivision thereof," the Court held the officers were not covered by the provisions of section 784.07, Florida Statutes.
Similarly, a federal veterans affairs police officer is not an employee or officer of "any municipality or the state or any political subdivision thereof."[11] Thus, the provisions of the Baker Act imposing certain duties and responsibilities on law enforcement officers are not applicable to a federal veterans affairs police officer. Accordingly, provisions relating to the initiation of involuntary examination or the transportation of persons by law enforcement officers under the Baker Act do not apply to a federal law enforcement officer.[12]
This office, however, has recognized that Part I, Chapter 23, Florida Statutes, the Florida Mutual Aid Act, authorizes state and local law enforcement agencies in the State of Florida to enter into a mutual aid agreement with a law enforcement agency of the United States.[13] As used in the act, the term "mutual aid agreement" refers to
(1) A voluntary cooperation agreement, in writing, between two or more law enforcement agencies which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines;
(2) A requested operational assistance agreement, in writing, between two or more law enforcement agencies for the rendering of assistance in a law enforcement emergency; or
(3) A combination of the agreements described in (1) and (2).[14]
Thus, under the provisions of the Florida Mutual Aid Act, a state or local law enforcement agency could enter into a mutual aid agreement with a law enforcement agency of the United States to assist in the enforcement of the Baker Act as may be authorized by the terms of the agreement.
Absent such an agreement and until and unless the Legislature amends the definition of "law enforcement officer" for purposes of the Baker Act to include federal officers, I am of the opinion that federal law enforcement officers do not constitute law enforcement officers for purposes of Florida's Baker Act, and thus possess no authority under the act to initiate the involuntary examination of a person or to transport such person as law enforcement officers.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 394.451, Fla. Stat.
[2] Section 394.455(26), Fla. Stat., defines a "[r]eceiving facility" as "any public or private facility designated by the department to receive and hold involuntary patients under emergency conditions or for psychiatric evaluation and to provide short-term treatment. The term does not include a county jail."
[3] Section 394.463(1)(b), Fla. Stat.
[4] The statutes define "[c]linical record" to mean "all parts of the record required to be maintained and includes all medical records, progress notes, charts, and admission and discharge data, and all other information recorded by a facility which pertains to the patient's hospitalization and treatment." See, s. 394.455(3), Fla. Stat.
[5] See, s. 394.463(2)(a)1. and 3., Fla. Stat.
[6] Id. If the court has entered an ex parte order for involuntary examination, an agent of the court, in place of a law enforcement officer, may be designated to transport the person to the nearest receiving agency. Id. If a member of a mental health overlay program or a mobile crisis response service is a professional authorized to initiate an involuntary examination under s. 394.463, Fla. Stat., and that professional determines that transportation is needed, the service, at its discretion, may transport the person to the facility or call on the law enforcement agency or other transportation arrangement best suited to the needs of the patient. Section 394.462(1)(e), Fla. Stat.
[7] See, s. 394.462(1)(a)1.-3., Fla. Stat. And see, s.394.462(1)(b), Fla. Stat., stating that any company transporting a patient under this subsection is considered an independent contractor and is solely liable for the safe and dignified transportation of the patient.
[8] Section 394.462(2)(d), Fla. Stat. But see, s. 394.462(3), Fla. Stat., authorizing the Secretary of the Department of Children and Family Services to grant exceptions to the statute.
[9] Section 394.455(16), Fla. Stat.
[10] 721 So.2d 1170, 1172-1173 (Fla. 1998).
[11] And see, Op. Att'y Gen. Fla. 74-39 (1974) (neither a United States marshal nor his deputy is a law enforcement officer within the meaning of s. 394.463, Fla. Stat., relating to involuntary examinations under the Baker Act).
[12] See, s. 394.462, Fla. Stat., regarding the transportation of persons to a receiving facility and transportation to a treatment facility.
[13] See, Op. Att'y Gen. Fla. 94-36 (1994).
[14] See, s. 23.1225(1)(a), (b), and (c), Fla. Stat. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency that shall bear any liability arising from the acts undertaken under the agreement, the procedures for requesting and authorizing assistance, the agency that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency, and any other terms and conditions necessary to give it effect. And see, s. 23.127(4), Fla. Stat., providing that a mutual aid agreement between law enforcement agencies in this state and any law enforcement agency of another state or of the United States or its territories has the status of an interstate compact.